JOHN J. MULVANEY and MARIAN L. MULVANEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mulvaney v. Commissioner
Docket No. 33062-85.
United States Tax Court
T.C. Memo 1986-515; 1986 Tax Ct. Memo LEXIS 90; 52 T.C.M. (CCH) 831; T.C.M. (RIA) 86515; October 20, 1986. John J. Mulvaney and Marian L. Mulvaney, pro se. Douglas W. Hinds, for the respondent. PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7456(d) of the Code and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioners' 1983 Federal income tax and additions to tax for such year, as follows: Addition to Tax
I.R.C. 1954
Deficiency
Section 6653(a)(1)
Section 6653(a)(2)
$3,757.00
$187.85
50% of the interest
due on $3,757.00
*92 After concessions by both parties, the remaining issues for decision are (1) whether petitioners are entitled to a charitable contribution deduction for certain land which they transferred to the Freedom Church during 1983, and (2) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations as determined by respondent. During the year in issue, and at the time they filed their petition in this case, petitioners were residents of Maryland Heights, Missouri. Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. During the year in issue petitioners were owners of a two-thirds undivided interest in 120 acres of undeveloped land (the land) located in California City, California. During May of 1983, petitioner John Mulvaney (hereinafter "petitioner") received a telephone call from Roy Stubblefield (Stubblefield), who identified himself as the head of the Freedom Church located in Phoenix, Arizona. Stubblefield explained that he had discovered that petitioners owed back taxes to the State of California with respect to the land, and that *93 he would like petitioners to contribute the land to the Freedom Church. Since petitioner was not familiar with the Freedom Church or with Stubblefield, he requested that Stubblefield mail to him some information concerning the Freedom Church. Subsequently, petitioners transferred their interest in the land to the Freedom Church on July 25, 1983. At the time of the transfer, petitioner's interest in the land had a fair market value of $45,861. Petitioners' share of an outstanding mortgage balance and of delinquent real property taxes with respect to the land at the time of the transfer was $10,470.29 and $7,370.93, respectively. Petitioner engaged the services of the St. Louis office of Coopers and Lybrand, Certified Public Accountants, to advise him concerning the tax consequences of the transfer to the Freedom Church. In a letter to petitioner, dated September 29, 1983, Coopers and Lybrand informed petitioner that the Freedom Church was not included on a list of qualified charitable organizations published by the Internal Revenue Service, but noted "that does not preclude its being a qualified organization since churches are not required to file for tax-exempt status with the *94 Internal Revenue Service." The letter went on the state: We spoke to Mr. Stubblefield by phone who informed us that he did serve as the administrator of the Freedom Church in Phoenix, Arizona. However, we have not otherwise verified the existence or status of the Freedom Church. On their 1983 income tax return petitioners claimed a charitable contribution deduction with respect to their transfer of the land. The parties are in agreement as to the amount of such deduction in the event we find that a valid charitable contribution was made by petitioners. Respondent's contention, however, is that petitioners have not shown that the contribution was made to a qualified charitable organization and is, therefore, not allowable. Individual taxpayers are permitted to deduct any charitable contribution "payment of which is made during the taxable year." Section 170(a)(1). Section 170(c) defines the term "charitable contribution," in pertinent part, as follows: (c) Charitable Contribution Defined. -- For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, fund or *95 foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious * * * purposes, * * * (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * Deductions are a matter of legislative grace, and taxpayers must satisfy each element of the statutory requirements of the deductions they claim. Deputy v. du ; . The taxpayers bear the burden of proving their entitlement to the deductions claimed. Rule 142(a). In order to sustain their burden of proof with respect to the disputed charitable contribution, petitioners must establish, inter alia, that such contribution was made to an organization qualified under section 170(c)(2). See section 501(c)(3). Based upon this record, petitioners have failed to carry their burden of proof. Petitioners introduced no evidence at trial establishing that the Freedom Church was organized *96 and operated exclusively for any of the purposes enumerated in section 170(c)(2)(B), nor have they established that no part of the net earnings of such organization inures to the benefit of any private individual. [2] Section 170(c)(2)(C). Consequently, petitioners are not entitled to a deduction with respect to the land they transferred to such church during the year in issue.Accordingly, respondent is sustained on this issue. We next consider whether petitioners are liable for the additions to tax *97 under sections 6653(a)(1) and (2) for negligence. The burden of proof with respect to this issue is on petitioners. ; . The record clearly indicates that petitioners did not ascertain the status of the Freedom Church as a qualified charitable organization prior to claiming the deduction here in dispute. At the time of the contribution petitioners had no personal familiarity with the Freedom Church and, apparently, had never met anyone associated with such church. Although petitioners sought professional tax advice with respect to the transfer, the opinion which petitioners obtained from their certified public accounts stated that the Freedom Church was not included on a list of qualified charitable organizations maintained by the Internal Revenue Service and that, except for a phone call to Stubblefield, petitioners' accountants had not otherwise verified the status of the Freedom Church, or even its existence. Petitioners clearly ignored the implications of such advice since they pursued the matter no further. Compare , *98 affd. . Under the circumstances, we find that petitioners were negligent with regard to the charitable contribution deduction. Further, we sustain respondent's determination of negligence with respect to those items conceded by petitioners since petitioners have presented no evidence on the negligence issue regarding such items. Accordingly, petitioners are liable for the additions to tax under section 6653(a) with respect to the entire underpayment. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners attempted at trial to introduce into evidence literature concerning the alleged activities of the Freedom Church, and a copy of a document entitled "Living Equity Trust Contract" purporting to show that such church is a trust and that Stubblefield was appointed during 1979 as its "Principal Trustee and Administrator." Petitioner received such information in response to his request, during his telephone conversation with Stubblefield in May of 1973, for information concerning the activities of the Freedom Church. We sustained respondent's hearsay objection at trial as to the contents of such documents, admitting them solely on the issue of petitioner's negligence.↩